28 C.C.P.A.(Patents)

## In re SCHWENDLER et al.

### Patent Appeal No. 4370.

Court of Customs and Patent Appeals.
Nov. 8, 1940.

M. Theodore Simmons, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The instant appeal is from the decision of the Board of Appeals of the United States Patent Office, modifying that of the Primary Examiner who declined to allow 26 claims in an application relating to an invention concerning hardenable plastic compositions and the method of making them. The Board of Appeals reversed the decision of the examiner as to four claims numbered 30, 31, 32 and 33, which claims were the narrower ones and prescribed definite proportions of the different ingredients used in making the composition. The rejection of the other 22 claims by the examiner was affirmed. Except as to claims numbered 1, 2, 10, 13, 16, 41, 42, 44 and 46, appellants have taken no appeal here. From first to last there were submitted in the instant application 46 claims.

Claims 1 and 2 illustrate the nature of the article and method claims at bar and follow:

"1. A hardenable plastic composition consisting of calcined magnesite, inert and cellular filler materials, and a plasticising fluid in sufficient amount to and containing a quantity of magnesium sulphate sufficient to precipitate and maintain in place as calcium sulphate substantially all active calcium in the composition.

"2. The method of producing a hardenable plastic material comprising mixing together calcined magnesite and inert and cellular filler materials and thereafter adding to the mixture a plasticising fluid containing a precipitating agent until a viscosity of the mixture is obtained whereby calcium sulphate precipitated by the plasticising fluid will not settle in the mass."

The examiner rejected all the claims in the application upon the ground that the claims were unduly multiplied. Notwithstanding this rejection, he recited that all the claims were rejected upon the following references: Gallinowsky, 401, 427, April 16, 1889; Conti et al., 705, 650, July 29, 1902; Turner, 1,256,847, February 19, 1918; McCaughey, 1,634,505, July 5, 1927; Lukens et al. 1,838,147, December 29, 1931; Snell, 1,964,088, June 26, 1934; Lukens, Re. 19,779, December 3, 1935; "Plastic Magnesia Cements," published by the Dow Chemical Co. 1927, pages 130 and 131, 20 to 26 and 66.

The reference Sorel, 53,092, March 6, 1866, is also included by the examiner in his listing of the references relied upon.

In view of the abandonment of certain claims containing certain limitations, some of the references are not pertinent and will not be discussed.

Certain claims were rejected by the examiner as being indefinite.

The Board of Appeals, which had before it 26 claims, held that with the exception of claims numbered 30, 31, 32 and 33, the claims did not patentably distinguish or definitely point out the applicants' invention over the prior art, especially Dow. As to the claims other than those it allowed, the board affirmed the decision of the examiner in rejecting the same as being "multifarious." The board pointed out that claim 1, like most of the other claims, was indefinite and functional and cited as in point the case of In re Stack, 87 F.2d 210, 24 C.C.P.A., Patents, 836. In allowing claims 30 to 33, inclusive, it disregarded the question of division and held that by reason of the specificity of the various compositions the claims were allowable over the prior art, and in this respect reversed the decision of the examiner.

In order to understand the issue involved in this rather complicated appeal, a somewhat thorough statement of the invention claimed is important. To begin with, the art is not a new one. Hardenable plastic compositions in the art of making caskets and various moldable articles have received much attention in this and other countries during the last hundred years. We find it necessary, in order to decide the issues as they are presented to us, to consider rather closely the claimed improvement made by the applicants, as well as the advancement made by those involved in the pertinent prior art cited.

The examiner had the following to say:

"The alleged invention described in this application concerns cementitious materials of the magnesia-oxychloride type. When magnesium oxide, magnesium chloride and water are mixed up in the form of a mortar, molded and allowed to set, a hard concrete-like body is produced. There may be various inert fillers included in the body. Such oxychloride bodies are well known in the art. The magnesia used in making such plastic cements usually contains some lime as an impurity which re-

mains in the final set body as calcium oxide or hydroxide or calcium chloride which in case of the oxide would react with the moisture in the atmosphere, or soil, if the finished body were in contact with the ground, which would produce heat, also the expansion would cause warping and cracking of the set body. The calcium chlori*ed* being soluble, would be bleached out of the body resulting in the weakening of the body.

"Applicants endeavor to overcome this difficulty by the use of magnesium sulphate along with the magnesia, magnesium chloride, water and inert filling materials. The magnesium sulphate reacts with the lime or calcium chloride in the mix precipitating calcium sulphate which is *un*soluble and inert. It is stated that this calcium sulphate remains uniformly distributed in the body.
\* \* \*

\* \* \* \* \*

"The prior art clearly discloses the use of such mixtures of calcined magnesite, filler, magnesium chloride and magnesium sulphate, the same materials as are used by applicant."

Appellants in this court urge that the gist of the invention is keeping calcium sulphate in the mixture and having it serve a useful purpose rather than that of getting rid of it. They emphasize in their specification and in their brief before this court, as well as in most of the claims on appeal, such as claim 1, that it was necessary in making the plastic composition, which consisted of calcined magnesite, inert and cellular filler materials, and a plasticising fluid, to use a *sufficient amount* of the latter which contained (quoting from claim 1) "magnesium sulphate sufficient to precipitate and *maintain in place* as calcium sulphate substantially all active calcium in the composition." (Italics ours.) All the ingredients were old in the prior art, but it is emphasized that certain of them should be used in sufficient quantities *to bring about certain results.* In appellants' brief, in discussing the Dow reference, they say:

"In other words, so far as this publication goes the 'full significance' of precipitating the calcium chloride as calcium sulphate was in improving the water resistance properties and in decreasing the volume change in the cement, and there the teaching of the article stops.

"There is no appreciation of the desirability of maintaining the precipitated cal-cium sulphate in the places where it is formed in the solution. Dow certainly does not say or show that the calcium sulphate adds any mechanical strength or any resiliency to the finished product in his case."

It seems clear that appellants' claimed invention in the claims appealed rests in bringing about certain alleged desirable results by the use of *a sufficiency* of certain old ingredients, the amount being stated broadly in the appealed claims and within definite limitations in the allowed claims.

We are at some loss to understand the exact attitude of the Board of Appeals with reference to its approval of the rejection by the examiner on the ground of undue multiplicity of the claims. It considered them all, allowed four, and approved the decision of the examiner holding that the remainder of the claims were "multifarious and properly rejected also for this reason."

██ An applicant for a patent does not comply with the statutory requirement if he does not "file in the Patent Office a written description \* \* \* in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it [the claimed invention] appertains, or with which it is most nearly connected, to make, construct, compound, and use the same." 35 U.S.C.A. § 33. If, in attempting to define his invention, he has unduly multiplied his claims so as to bring about confusion, rather than clarity and conciseness, he has not complied with the mandate of the statute, and the Patent Office, under such circumstances, may properly reject all the claims of the application on that ground alone.

Since the Patent Office did not stand alone upon its rejection of the claims on the ground of undue multiplicity, and since we agree with the rejection upon the prior art, we do not find it necessary to make this ground of rejection the basis of our decision herein. In passing, it may be said that it is difficult to understand why it required so many claims to define appellants' alleged invention. The record is replete with numerous amendments, submissions of new claims, and petitions for reconsideration.

██ We approve of the action of the Board of Appeals in affirming the decision

of the examiner, rejecting the claims here on appeal on the prior art cited. We will not consider the rejection on the ground of undue multiplicity of the claims, or the rejection upon the ground that some of the claims are of "indefinite and functional nature."

Appellants' appeal does not include claims 5, 6, 14, 17, 18, 20, 23, 24, 25, 34, 36, 38 and 40. There is, therefore, presented for our consideration only nine claims—1, 2, 10, 13, 16, 41, 42, 44 and 46. It may be remarked here that if this court found it necessary to consider the question of undue multiplicity of the claims, appellants' dismissal of the appeal as to the claims above enumerated would have no effect on the issue as it comes to us.

Claims 1, 2, 10, 13 and 16 were rejected on Snell and Lukens et al. (1,-838,147), in view of Gallinowsky, Turner, Dow and Conti. It was pointed out by the examiner that the prior art cited clearly disclosed the use of mixtures of calcined magnesite, filler, magnesium chloride and magnesium sulphate, all these materials being used by the applicants. The examiner stated:

"Conti, Lukens et al., Snell, Sorel and the Dow Chemical Co. Bulletin (Plastic Magnesia Cements) clearly disclose that it is old to use magnesium sulphate in order to precipitate the lime present in the mixture as calcium sulphate. The above patents clearly show the use of pumice, asbestos, wood flour or sawdust, silex and diatomaceous earth (kieselguhr) which are the same fillers that applicants use. The use of light cellular aggregates to produce a light weight material is well known in the art and is clearly shown in the references. It is obvious that applicants' claims read directly on the references cited (Conti, Lukens et al., Snell, Sorel and the Dow Chemical Co. Bulletin pages 20 to 26 and 66 showing the use of various fillers); the functional statements cannot be considered as differentiating the claims from this prior art. See Holland Furniture Co. v. Perkins Glue Co., 275 U.S. 512 [48 S.Ct. 28, 72 L.Ed. 400], 1928 C.D. 266 (a decision of the United States Supreme Court):

" 'Where the only attempt to restrict the claims to avoid the cited art is to claim the invention disclosed by functional statements which in view of the art is old, there is no invention.' "

The examiner also cited on this phase of the case Ex parte McCulley and Ruehlmann, 1929 C.D. 68.

The examiner further stated: "Applicants have filed affidavits for the purpose of showing that one particular example shown in the prior art does not produce the results obtained by the use of proportions as set forth in applicants' specification, especially in regard to the uniform distribution of the calcium sulphate. The references teach many proportions and it is obvious that any one skilled in the art, if he found that the proportions taught did not produce the desired results, would vary the proportions so as to secure better results. It is also obvious that if it is wished to prevent settling of the ingredients the mass should be made thicker or more viscous. The McCaughey reference shows the variation of the relative proportions in such oxychloride cements. Although this reference states that free lime may be present, the other references clearly teach the removal of the free lime by precipitation as calcium sulphate. The affidavit of Friedman amounts merely to pointing out the differences between applicants' material and that of the various references. What the various references teach is to be obtained from the references themselves and is not proper subject matter of an affidavit."

Appellants filed several affidavits in an attempt to show that their product differed in quality from those produced by prior art methods. We have examined the affidavits with care, and the references cited by the examiner and relied upon by the board, and we are not convinced that the broad claims which have been rejected by both tribunals are patentable over the prior art cited. It seems too obvious for extended discussion that appellants' contribution to the art has been by experimentation in discovering the exact proportions of the ingredients used, all of which ingredients were old in the art. For this contribution the Patent Office has allowed four claims, and we think that if appellants have contributed to the art in a patentable sense, they are amply protected for such contribution in the claims thus allowed.

The decision of the Board of Appeals, affirming that of the examiner in the rejection of the appealed claims, is affirmed.

Affirmed.